UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| BENNIE JOE ANDERSON, JR., | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No.: 3:24-CV-484-KAC-DCP |
| CITY OF KNOXVILLE, *et al.*, | ) |
| Defendants. | ) |

## ORDER & REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b) and the Rules of this Court on Plaintiff's Application to Proceed In Forma Pauperis With Supporting Documentation ("Application") [Doc. 1] and his Amended Complaint [Doc. 11]. On December 16, 2024, the Court entered an order explaining that there were certain deficiencies in Plaintiff's initial complaint [Doc. 6]. Instead of recommending dismissal, the Court allowed Plaintiff to file an amended complaint in an attempt to cure these deficiencies [*Id.*].[1] On January 13, 2025, Plaintiff filed an Amended Complaint [Doc. 11].

For the reasons more fully stated below, the undersigned **GRANTS** Plaintiff's Application [**Doc. 1**] but **RECOMMENDS** that the District Judge **DISMISS** the Amended Complaint [**Doc. 11**].

---

[1] United States Magistrate Judge Jill E. McCook entered the Order allowing Plaintiff to amend [Doc. 6]. On January 7, 2025, Judge McCook entered an Order recusing from the matter [Doc. 9].

## I. DETERMINATION ABOUT THE FILING FEE

Plaintiff has filed an Application [Doc. 1] with the required detailing of his financial condition. Section 1915 allows a litigant to commence a civil or criminal action in federal court without paying the administrative costs of the lawsuit. *Denton v. Hernandez*, 504 U.S. 25, 27 (1992). The Court's review of an application to proceed without paying the administrative costs of the lawsuit is normally based solely on the affidavit of indigence. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262–63 (6th Cir. 1990) (observing that "the filing of a complaint is conditioned solely upon a person's demonstration of poverty in his affidavit and the question of frivolousness is taken up thereafter"). To proceed without paying the administrative costs, the plaintiff must show by affidavit the inability to pay court fees and costs—it is a threshold requirement. 28 U.S.C. § 1915(a)(1). One need not be absolutely destitute, however, to enjoy the benefit of proceeding in the manner of a pauper, or in forma pauperis. *Adkins v. E. I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 342 (1948). An affidavit to proceed without paying the administrative costs is sufficient if it states that the plaintiff cannot, because of poverty, afford to pay for the costs of litigation and still pay for the necessities of life. *Id.* at 339.

The Court finds the Application is sufficient to demonstrate that Plaintiff has no income and few assets. Considering Plaintiff's Application, it appears to the Court that his economic status is such that he cannot afford to pay for the costs of litigation and still pay for the necessities of life. The Court will allow Plaintiff to proceed in the manner of a pauper. The Court **DIRECTS** the Clerk to file the Amended Complaint in this case without payment of costs or fees. The Clerk **SHALL NOT**, however, issue process at this time.

## II. RECOMMENDATION AFTER SCREENING OF THE COMPLAINT

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. 28 U.S.C. §§ 1915(e)(2); *Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999).[2] Courts also have a continuing duty to ensure that jurisdiction exists to hear the case. *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." (citations omitted)). To survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### A. Summary of the Complaint

On December 3, 2024, Plaintiff filed his original Complaint [Doc. 2]. As previously summarized:

> Plaintiff filed a Complaint naming approximately twenty-six individuals. Plaintiff alleges that he experienced a traumatic fall while employed by the City of Knoxville. When he was on leave for his injury, the City of Knoxville terminated his employment. He appeared before the Tennessee Bureau of Workers' Compensation, but "Judge Lisa Lowe purposely threw out all [his] evidence that could've got [him] the treatment that [he] still needed[.]" He states, "I felt discriminated and traumatized through out this whole

---

[2] Despite the reference to prisoners, 28 U.S.C. § 1915 requires the Court to screen complaints filed by non-prisoners seeking in forma pauperis status. *McGore v. Wrigglesworth*, 114 F. 3d 601, 608 (6th Cir. 1997) ("Unlike prisoner cases, complaints by non-prisoners are not subject to screening process required by § 1915A. However, the district court must still screen the complaint under § 1915(e)(2)."), *overruled on other grounds by Jones v. Brock*, 549 U.S. 199 (2007).

3

> workman comp process. I felt like Judge Lisa Lowe[] had her mind made up before she came to court. I felt my rights were violated through this whole process[.]" Plaintiff identifies several physicians who treated him and claims that they had conflicts of interests. Plaintiff seeks $5 million dollars. He also requests that he be given proper medical treatment and that Defendants quit interfering with his attempt to seek medical help.

[Doc. 6 pp. 2–3 (citations and footnote omitted)].

On January 13, 2025, Plaintiff filed an Amended Complaint [Doc. 11]. Plaintiff alleges that on June 6, 2022, while employed by Defendant City of Knoxville ("City"), he was injured on the job [Doc. 11-1 p. 1]. He contends that he was not properly trained to operate the equipment and that his supervisor, Defendant Ben Buckner ("Buckner"), was aware that he had not been properly trained [*Id.*]. Two days after the incident, Defendant Buckner sent Plaintiff to see Defendant Katy Tilley ("Tilley"), a nurse practitioner, because Plaintiff could not move his neck or raise his arms [*Id.*]. Defendant Tilley ordered x-rays and told Plaintiff, via voicemail, that she was concerned about Plaintiff's fractures [*Id.*]. Defendant Tilley later told Plaintiff that he "had fractures in the left side of [his] neck and had a broken rib on the right side[,] the tenth rib" [*Id.*]. Defendant Tilley also told Plaintiff that she was "going to get [him] in to see a specialist[,]" but Plaintiff alleges that he never heard from her again [*Id.*]. Defendant City of Knoxville Employee Health Center ("Employee Health Center") offered Plaintiff three doctors from whom he could seek treatment [*Id.*].

Plaintiff chose Patrick Bolt, M.D. ("Dr. Bolt"), but he was not available [*Id.*]. Defendant Employee Health Center made Plaintiff an appointment with Dr. Daniel B. Wells ("Dr. Wells") [*Id.*]. Dr. Well's nurse practitioner, Defendant Ashley Hethcoat ("Hethcoat"), ordered x-rays and confirmed what Defendant Tilley had already found [*Id.*]. Defendant Hethcoat, however, opined that Plaintiff's injuries were old [*Id.*]. Plaintiff alleges that Defendant Hethcoat "purposely

covered up for the [D]efendant City of Knoxville" [*Id*.]. Further, Plaintiff avers that Dr. Wells opined that "everything looked ok[,]" and he did not mention the fractures [*Id*. at 2].

When Plaintiff returned to work, he was still experiencing pain [*Id*.]. Defendant Buckner called his supervisor, Defendant Chad Welth ("Welth"), to observe Plaintiff [*Id*.]. Defendant Welth contacted Defendant Knoxville Risk Management, and afterwards Plaintiff was told to go home [*Id*.].

Plaintiff continued to treat with several medical providers, many of whom he names as Defendants [*Id*. at 2–9].[3] One medical provider told Plaintiff "that the City and the State wanted him to say nothing [was] wrong with [Plaintiff]" [*Id*. at 3]. On January 18, 2023, Defendant City terminated Plaintiff's employment while he was treating with Dr. Bolt [*Id*.].

Plaintiff later learned that his medical providers were "all in the same network [which is a] conflict of interest" [*Id*.]. He claims that the medical providers, whom he names as Defendants, made false statements about his health in violation of 18 U.S.C. § 1305 [*Id*.]. He states that "[Defendant] City of Knoxville played a role in . . . covering up [his] workman-comp case" and that it "knew that [there was] nothing . . . wrong with [Plaintiff] . . . before [his] trauma fall" [*Id*. at 9]. Plaintiff alleges that Dr. James Jolley recommended additional treatment, but Defendant Sedgwick Insurance ("Sedgwick") changed Dr. Jolley's clinical notes [*Id*.].

It appears to the Court that Plaintiff filed a workman's compensation claim, and Defendants Victoria Herman and Glen Rutherford represented him [*Id*.]. But Plaintiff alleges that Defendant Herman did not represent him adequately [*Id*.]. Plaintiff paid Defendant James D. Little, M.D. ("Dr. Little"), to provide an opinion, but Plaintiff learned that "he has ties with [D]efendant

---

[3] Plaintiff has filed his medical records as exhibits to his Amended Complaint [Docs. 11-2 to 11-11].

Sedgwick Insurance" [*Id.*]. Had Plaintiff known about Dr. Little's conflict, he would not have asked him to provide an opinion [*Id.*]. According to Plaintiff, "Judge Lisa A. Lowe did not use[] her judgment well in this case" [*Id.*]. Plaintiff states that he feels "like her mind was already made up" [*Id.*]. He asserts that she ignored the proof in this case, which showed that he needed additional medical treatment [*Id.*].

Based on the above, Plaintiff seeks $5 million in punitive damages; $142,690 in lost wages, including overtime; $60,000 in lost medical insurance, and an unknown amount for additional medical treatment [*Id.*].

**B.      Screening of the Complaint**

Plaintiff's allegations stem from his work accident, the treatment he received afterwards, and his workers' compensation claim. He generally alleges that he did not receive adequate medical treatment from the Defendant medical providers and that they falsified medical records in order to assist Defendant City and Defendant Sedgwick Insurance Company. He also alleges deficiencies with the Defendant attorneys and judge in his workers' compensation case. But his Complaint suffers from the same deficiencies that the Court has already noted [*See* Doc. 6]. As previously explained, federal courts have limited jurisdiction. First, federal courts have jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff has only identified 18 U.S.C. § 1035 [Doc. 11-1 p. 3]. But it is a criminal statute that does not contain a private right of action. *Hodges v. Rufus*, No. 2:24-CV-141, 2024 WL 469403, at *2 (S.D. Ohio Feb. 7, 2024) (dismissing the plaintiff's 18 U.S.C. § 1035 claim because there is no private right of action). This is the only federal law that Plaintiff

6

references in his Amended Complaint [*See* Doc. 11].[4]

The Court may exercise jurisdiction in diversity cases. Specifically, federal courts have jurisdiction when there is diversity of citizenship, meaning the parties are "citizens of different states." 28 U.S.C. § 1332(a)(1). Diversity of citizenship exists where (1) the plaintiff is a citizen of one state and all of the defendants are citizens of other states, and (2) the amount in controversy is more than $75,000. *See Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 541 (6th Cir. 2013). A plaintiff must affirmatively allege the facts showing the existence of jurisdiction in the Complaint. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 183 (1936); Fed. R. Civ. P. 8(a)(1). Plaintiff has not alleged facts to show that diversity of citizenship exists in this case. As previously noted [*see* Doc. 6], based on the allegations in the Complaint, and reasonable inferences from those allegations, both Plaintiff and Defendants are citizens of Tennessee. The undersigned therefore finds that it lacks jurisdiction to hear this matter.

### C. Amending the Complaint

The Court has considered whether to allow Plaintiff to amend his Amended Complaint but declines to do so. The Court has already allowed Plaintiff to file an amended pleading. He filed an Amended Complaint, but it did not cure the deficiencies as previously outlined [*See* Doc. 6].

---

[4] Plaintiff wrote "wrongfully terminated" and "discrimination" on the first page of his Amended Complaint [Doc. 11 p. 1]. But he does not provide sufficient facts for the Court to find that he has properly alleged a claim under federal law for wrongful termination or discrimination.

## III. CONCLUSION

For the reasons explained above, the undersigned **GRANTS** Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs [**Doc. 1**] [5] but **RECOMMENDS** that the District Judge **DISMISS** Plaintiff's Amended Complaint [**Doc. 11**] without prejudice. [6]

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[5] This matter is to be presented to the District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990), wherein the Court of Appeals states that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed without prepayment of costs.

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).